```
                UNITED STATES DISTRICT COURT
                EASTERN DISTRICT OF MISSOURI
                      EASTERN DIVISION
```

MARK MCGOWEN,                        )
                                     )
        Plaintiff,                   )
                                     )
    vs.                              )      No. 4:04CV619-DJS
                                     )
CITY OF ST. LOUIS, MISSOURI,         )
JOHN H. CLARK,                       )
STANLEY NEWSOME, SR.,                )
TIMOTHY OGLE, and                    )
PATRICK MARTOCCI,                    )
                                     )
        Defendants.                  )

## ORDER

Plaintiff filed a three-count petition in the Circuit Court of the City of St. Louis challenging his layoff from civil service employment as a locksmith at the Lambert-St. Louis International Airport. The action was removed to this Court. Counts I and II of the petition, brought under state law seeking judicial review of the decision of the Civil Service Commission of the City of St. Louis affirming the layoff, were remanded to the state court pursuant to 28 U.S.C. §1441(c). Now before the Court is a summary judgment motion directed by the remaining defendants to the sole remaining claim of the petition. Count III asserts a claim under 42 U.S.C. §1983 that, in connection with plaintiff's layoff, the City and individual defendant Patrick Martocci violated

plaintiff's due process and free speech rights under the federal Constitution.

The Supreme Court has held that "a State cannot condition public employment on a basis that infringes the employee's constitutionally protected interest in freedom of expression." Connick v. Myers, 461 U.S. 138, 142 (1983). Connick set out a two-pronged test for determining whether particular speech by a public employee is protected under the First Amendment, and indicated that the test involves questions of law and is to be applied by the Court rather than the jury. Id. at 150, n.10. To be protected under the Connick test, the speech must be "on a matter of public concern." Buzek v. County of Saunders, No. 91-3564, slip op. at 4 (8th Cir. Aug. 17, 1992). Second, "the interests of the [employee], as a citizen, in commenting upon matters of public concern [must outweigh] the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees." Pickering v. Board of Education, 391 U.S. 563, 568 (1968), *quoted in* Connick, 461 U.S. at 142.

The first amendment claim at bar is based on plaintiff's allegation that his locksmith position was eliminated "upon the recommendation of his supervisor to punish him for speaking out on the supervisor's failure to return tools to the locksmith shop." Petition, p.7, ¶11(C). The record discloses that the incident in question occurred on April 11, 2002, in a discussion involving

2

plaintiff and his supervisor, Lewis Robinson. Defendants argue that, as characterized by plaintiff in his complaint, the speech for which he was allegedly retaliated against was not on a matter of public concern, as is required for first amended protections to attach. Hasty v. City of Gladstone, 247 F.3d 723, 725 (8th Cir. 2001); Calvit v. Minneapolis Public Schools, 122 F.3d 1112, 1117 (8th Cir. 1997); Buazard v. Meridith, 172 F.3d 546 (8th Cir. 2000).

Plaintiff now asserts that he spoke out of concern that the missing tools could be used to breach security at the Airport and concern that missing tools would have to be replaced at substantial taxpayer cost. These motives are stated in plaintiff's affidavit prepared to support his opposition to the summary judgment motion. Affidavit of Mark McGowen [Att. #7 to Doc. #22], ¶¶13-17. The affidavit references plaintiff's memorandum dated April 12, 2002, the day after the incident, as memorializing plaintiff's conversation with Robinson. That contemporaneous memorandum, the text of which is set forth in Appendix 1 to this order, expresses plaintiff's frustration with Robinson's habit of borrowing tools and failing to return them. The memorandum contains no support for plaintiff's assertions that public safety or taxpayer concerns motivated his speech, and contains no support for a conclusion that plaintiff's speech on April 11 referenced such matters of public concern. Plaintiff's testimony before the city's Civil Service Commission concerning the April 11 incident similarly fails to reflect any public safety or taxpayer concerns,

3

but merely plaintiff's complaints that Robinson would borrow tools and not return them to the locksmith shop. Transcript [Doc. #21 - Exh. A], p.220.

Whether plaintiff's speech can be fairly characterized as constituting speech on a matter of public concern is a question of law for the Court to decide, and the plaintiff bears the burden of demonstrating he engaged in constitutionally protected activity. Belk v. City of Eldon, 228 F.3d 872, 878 (8th Cir. 2000); Calvit v. Minneapolis Public Schools, 122 F.3d 1112, 1116 (8th Cir. 1997). To evaluate whether the speech addressed matters of political, social or other community concern, the Court considers the content, form and context of the speech as revealed by the entire record. Id. "Not every statement made by a public employee about her job addresses a matter of public concern, however." Id. at 879. "When a public employee's speech is purely job-related, that speech will not be deemed a matter of public concern....Unless the employee is speaking as a concerned citizen, and not just as an employee, the speech does not fall under the protection of the First Amendment." Buazard v. Meridith, 172 F.3d 546, 548 (8th Cir. 1999).

Because the content, form and context of plaintiff's speech at the time it was made addressed only the proper return and storage of tools, a matter relevant only to the convenience and efficiency of fellow employees rather than any political or social interests of the community, the Court concludes that the speech was not on a matter of public concern. The Court's analysis is not

altered by plaintiff's later claims to a public-minded motivation that was in no way demonstrated at the time of the speech. For these reasons, the Court concludes that the remaining defendants are entitled to judgment as a matter of law on the free speech claim asserted in Count III of plaintiff's complaint.

The record reflects a second disagreement between plaintiff and Robinson which occurred on April 25, 2002. This incident involved plaintiff's response to Robinson's directive to change locks for the U.S. Customs and Immigration Service's area in the airport. Robinson found fault with plaintiff's approach to the assignment and his disclosure of certain information to an Immigration employee in response to her concern that the area was being accessed without authorization at night. Again, the record contains contemporaneous writings by plaintiff memorializing the incident.

In contrast to plaintiff's memorandum concerning the April 11 disagreement, these writings express concerns about airport security. But any speech by plaintiff on matters of public concern arising out of the April 25 incident is unavailing to stave off summary judgment on his first amendment claim in this case, as the statement of that claim in plaintiff's petition clearly refers only to the April 11 incident. The petition references the dispute between Robinson and plaintiff "regarding Robinson's failure to return tools that he took from the lock shop." Petition, p.4, ¶10(E). The allegation of free speech violations references, as

earlier noted, punishing plaintiff "for speaking out on the supervisor's failure to return tools to the locksmith shop." Id. at 7, ¶11(C). The petition makes no reference to the dispute concerning the locksmith work for Immigration and Customs, and any protected speech by plaintiff with respect to that incident does not preclude summary judgment on the claim stated in plaintiff's pleadings.

The due process claim is premised on plaintiff's allegation that "the notice of layoff provided to plaintiff failed to provide him with a reasonably adequate description of the manner in which the initial decision was reached to layoff plaintiff or disclose to plaintiff the information and data relied upon by the decision-makers in deciding to layoff plaintiff." Id. at 8, ¶11(G). Defendants contend that due process requirements were satisfied by the prior notice plaintiff received advising him he would be laid off due to lack of funds, and by the post-termination hearing plaintiff received on his appeal to the Civil Service Commission. That hearing afforded plaintiff, who was represented by counsel, the opportunity to cross-examine witnesses against him and to call witnesses and offer evidence.

In opposition to the summary judgment motion, plaintiff argues that the Court lacks subject matter jurisdiction over the procedural due process claim because plaintiff has not exhausted all state remedies, citing the continued pendency of plaintiff's judicial appeal of the Civil Service Commission's decision

6

affirming his termination.  The Eighth Circuit has held that: "Under federal law, a litigant asserting a deprivation of procedural due process must exhaust state remedies before such an allegation states a claim under §1983." Wax 'N Works v. City of St. Paul, 213 F.3d 1016, 1019 (8th Cir. 2000).  In the Court's view, this language does not support plaintiff's request for remand of the claim to state court.  If the claim is not yet ripe for adjudication and therefore fails to state a claim, it is subject to dismissal pursuant to Fed.R.Civ.P. 12(b)(1).  Id. at 1020.

Accordingly,

**IT IS HEREBY ORDERED** that defendant City of St. Louis and Patrick Martocci's motion for summary judgment [Doc. #15] is granted as to the remaining claims of plaintiff's petition.

Dated this   24th    day of May, 2005.

                                        /s/Donald J. Stohr
                                        UNITED STATES DISTRICT JUDGE

McGowen v. City of St. Louis, et al.
4:04CV619-DJS

      Appendix 1 to the Court's Order of May __24th__ , 2005

                                           April 12, 2002

To whom it may concern,

    Recently it has come to my attention that tools have come up missing in my room, (the lockshop).  In the past six months my immediate supervisor has been borrowing many tools from my shop as well as from other maintenance men in my department.  On many occasions he has had to be reminded to give them back, by others and me.  I brought this up to Lewis Robinson in front of other maintenance personnel so I had witnesses on 04/11/02.  His response was that all the tools in this shop were his to borrow any time he wants and if I wanted to do something about it go ahead.  Now today he called me in his office and said "he didn't like me accusing him of stealing."  After being asked why I accused him I explained that the people that have a key to my room hasn't changed in some time and those individuals have been borrowing my tools for some time without incident.  I then explained that I have to sign for those tools and am ultimately responsible for them.  He then told me that if I don't want him to borrow them to put them in my personnel locker, which is absurd considering the quantity of tools used in my profession.  I was then told that if I have a problem with my tools missing I should put it in writing and not just accuse him in front of others.

    I felt that I was taking the proper procedures by bringing it up to him.  So this is why this letter has been written.

                                        Mark H. McGowen (Locksmith)
                                        Building Maintenance
                                        City of St. Louis